IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FRANCIS X. DOUGHERTY, : | |
| : | |
| Plaintiff, : | |
| v. : | CIVIL ACTION |
| : | |
| : | NO. 12-1001 |
| SCHOOL DISTRICT OF PHILADELPHIA : | |
| et al, : | |
| : | |
| Defendants. : | |
| : | |

**MEMORANDUM OPINION**

**Tucker, J.**                                                                                           **December ___, 2012**

Presently before the Court are Defendants' Motion to Dismiss Plaintiff's Complaint (Doc. 14); Plaintiff's Response in Opposition thereto (Doc. 17); Defendants' Reply (Doc. 23); and Plaintiff's Sur-Reply (Doc. 25).  Upon consideration of the parties' motions with briefs and exhibits, and for the reasons set forth below, Defendants' motion will be ***granted in part and denied in part***.

**I.  FACTUAL BACKGROUND**

Because the Court writes primarily for the parties, the Court will discuss only those facts necessary to its decision.  Plaintiff Francis X. Dougherty ("Dougherty") brings the instant civil action against the Defendants for his allegedly wrongful termination.  Dougherty served as Deputy Chief Business Officer for School District of Philadelphia ("School District") and directly participated in the execution and administration of School District contracts. (Compl. ¶¶3, 85-90, 115-117.)  Defendants are the School District; Arlene C. Ackerman, Leroy D. Nunery, II, and Estelle G. Matthews (collectively, "School District Defendants"); the School

1

Reform Commission ("SRC"); and Robert L. Archie, Jr., Denise McGregor Armbrister, Johnny Irizarry, and Joseph A. Dworetzky (collectively, "SRC Defendants").

Dougherty claims he was terminated by the Defendants, without justification, because he spoke out on issues of public concern and reported instances of wrongdoing and waste to the Federal Bureau of Investigation, Pennsylvania state legislators, the Office of the Inspector General for the United States Department of Education, and the *Philadelphia Inquirer*. (Compl. ¶¶ 134-145.) Specifically, Dougherty alleges that he reported the award of public contracts on the basis of favoritism, personal connections, and race. The award of contracts on these bases allegedly resulted in the inequitable and improper allocation of School District resources, to the detriment of the School District and the taxpayers who fund its operations.

Two contracts in particular are at issue here. Dougherty first alleges that in December 2009, then-Superintendent of Philadelphia Public Schools Arlene Ackerman ("Defendant Ackerman") directed him to "find some work" for IBS Communications, Inc. ("IBS"), a minority-owned enterprise, on a school camera project at South Philadelphia High School. (Compl. ¶ 58.) Dougherty alleges that at the time Defendant Ackerman ordered him to do this, the work at South Philadelphia High School was near completion. Dougherty and his staff nonetheless found work for IBS as a subcontractor on the project. Dougherty alleges the School District paid IBS $12,000 for drawings that would have cost the School District only $1,000 if completed by the company that the School District had already contracted with to do the work. (Comp; ¶ 63.)

Next, on September 2, 2012, Defendant Ackerman directed Dougherty to take charge of a security camera installation project for schools that were on the precipice of being designated as "persistently dangerous" by the Pennsylvania Department of Education (Compl. ¶ 72.) By

2

September 17, 2010, Dougherty and his team completed a plan to submit for the School Reform Commission's approval.  Under the plan, the School District would hire Security and Data Technologies, Inc. ("SDT"), a state-approved firm that had previously received School District contracts, as the prime contractor on the $7.5 million project. (Compl. ¶ 84-90.)  The plan provided that the rate of participation by minority-owned firms would be 33 percent and the rate of subcontractor participation by women-owned firms would be 34 percent. (Compl. ¶ 93.)

Dougherty alleges that, instead of recommending his plan to the School Reform Commission, Defendant Ackerman rejected the plan in its entirety, allegedly for its lack of minority participation.  Defendant Ackerman allegedly directed Dougherty to make IBS the prime contractor. (Compl. ¶ 99.)  Dougherty alleges that IBS, unlike SDT, was not a state-approved vendor and had never competitively bid for a School District contract. (Compl. ¶ 60-61.)  Dougherty further alleges that Defendant Ackerman gave the School District contracts to IBS because it was a minority-owned business with which she had a connection. (Compl. ¶ 64-66, 103-112.)  Ultimately, IBS, with the approval of the SRC, became the prime contractor on the project. (Compl. ¶ 132.)

It is at this point that Dougherty made his reports to the aforementioned authorities and the *Philadelphia Inquirer*.  As a result of these reports, the School District hired the Pepper Hamilton law firm to conduct an independent investigation into any alleged improprieties. (Compl. ¶ 168.)  On or about March 4, 2011, Pepper Hamilton issued a report of its investigation, along with findings and recommendations, to the School District. (Compl. ¶ 177.) Dougherty alleges, based on information and belief, that the Pepper Hamilton report identified him as the person who had given information to the *Philadelphia Inquirer* regarding the two contracts granted to IBS. (Compl. ¶ 179.)  Subsequently, on March 30, 2011, Defendant

Matthews sent Dougherty a letter notifying him that the School District would recommend the termination of his employment to the School Reform Commission. (Comp. ¶ 184.) On April 27, 2011, the SRC voted to terminate Dougherty's employment as of March 31, 2011 (Compl. ¶ 186.)

Dougherty's Complaint asserts twelve counts against the Defendants: alleged causes of action for First Amendment retaliation (Counts I through VI) and for violation of the Pennsylvania Whistleblower Law (Counts VII through XII). Dougherty's causes of action against the School District Defendants are for recommending his termination to the School Reform Commission. Dougherty's causes of action against the School Reform Commission Defendants are for voting or otherwise acting to terminate him.

## II.  STANDARD OF REVIEW

On a motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the court is required to accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and to view them in the light most favorable to the non-moving party. See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 (3d Cir. 1994). A complaint should be dismissed only if the alleged facts, taken as true, fail to state a claim. See In re Warfarin Sodium Antitrust Litig., 214 F.3d 395, 397-98 (3d Cir. 2000). The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

While a court will accept well-pleaded allegations as true for the purposes of the motion, it will not accept bald assertions, unsupported conclusions, unwarranted inferences, or sweeping

legal conclusions cast in the form of factual allegations. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The United States Supreme Court has recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original). In Twombly, the Court made clear that it would not require a "heightened fact pleading of specifics," but only "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A "pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'" Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993) (citations omitted).

In 2009, the United States Supreme Court revisited the requirements for surviving a 12(b)(6) motion to dismiss in Ashcroft v. Iqbal, 556 U.S. 662 (2009). In Iqbal, the Court made clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements [will] not suffice" to defeat a Rule 12(b)(6) motion to dismiss. Id. at 663. "[O]nly a complaint that states a plausible claim for relief [will] survive[] a motion to dismiss." Id. at 679.

In light of the decision in Iqbal, the Third Circuit set forth a two-part analysis to be applied by district courts when presented with a 12(b)(6) motion. First, the court must separate the legal elements and factual allegations of the claim, with the well-pleaded facts accepted as true but the legal conclusions disregarded. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009). Second, the court must determine whether the facts alleged in the complaint demonstrate that the plaintiff has a "plausible claim for relief." Id. at 211 (citation omitted). If

the court can only infer the mere possibility of misconduct, the complaint must be dismissed because it has alleged, but has failed to show, that the pleader is entitled to relief. Id.

## III.  DISCUSSION

**A. Dougherty's Factual Allegations Establish a Plausible Claim that the Defendants Violated His First Amendment Rights**

To establish a prima facie case of retaliation for engaging in First Amendment activity under 42 U.S.C. § 1983, a plaintiff must demonstrate that: (1) the activity at issue is protected by the First Amendment; (2) the defendants' adverse action was sufficient to deter a person of ordinary firmness from exercising his or her rights; and (3) that there was a causal connection between the protected activity and the retaliatory action. Lauren W. ex. rel. Jean W. v. DeFalminis, 480 F.3d 259, 267 (3d Cir.2007); see also Hill v. Borough of Kutztown, 455 F.3d 225, 241 (3d Cir.2006).  To satisfy the first element of the prima facie case for retaliation, a statement made by a government employee is protected when: (1) it is made by the employee in his or her capacity as a citizen; (2) the statement involved a matter of public concern; and (3) the government did not have an adequate justification for treating the speaker differently than a member of the general public. Hill, 455 F.3d at 242.  Whether the activity in question is protected by the First Amendment is purely a question of law to be decided by the court. Emigh v. Steffee, 442 Fed. Appx. 660, 665 (3d Cir. Pa. 2011) (citation omitted).

Here, Defendants challenge that Dougherty has not, and cannot, establish the first element of a prima facie case.  Specifically, Defendants argue that Dougherty has failed to establish the first two prongs of the analysis.[1]  Defendants base their challenge to Dougherty's First Amendment claims on two points. First, they argue that Dougherty's reports of wrongdoing are not entitled to First Amendment protection because they "took place entirely within the

---

[1] Defendants make no mention of the third prong in their motion or subsequent reply.

scope of his official duties." Defendants claim that Dougherty was speaking as a public employee when he reported alleged racial discrimination in the award of school district contracts to the FBI, Pennsylvania state legislators, the Office of the Inspector General for the United States Department of Education, and the *Philadelphia Inquirer*. Defendants contend that because Dougherty acted pursuant to his official duties as Deputy Chief Business Officer, his speech is not entitled to First Amendment protection.

The Supreme Court has made clear that public employees do not wholly surrender their First Amendment rights by reason of their employment. Rather, public employees have a qualified right under the First Amendment to speak as citizens addressing matters of public concern. See e.g. Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., 391 U.S. 563, 568 (1968); Connick v. Myers, 461 U.S. 138, 147 (1983); Garcetti v. Ceballos, 547 U.S. 410, 417 (2006). Pickering and its progeny have had the effect of dramatically narrowing the realm of public employee speech that is protected by the First Amendment. When a public employee speaks as an employee (i.e., within the course of his or her official duties), they are not entitled to First Amendment protection. Conversely, when an employee speaks as a citizen (i.e., by speaking on a matter of public concern), they are entitled to First Amendment protection. Thus, the question before the Court is into which category does Dougherty's conduct fall.

The Third Circuit has explained that "statements relate to an employee's official duties when they derive from 'special knowledge' or 'experience' acquired on the job." Brown v. Montgomery County, 470 F. App'x 87, 89 (3d Cir. 2012) (nonprecedential) (citing Foraker v. Chaffinch, 501 F.3d 231 (3d Cir.2007), abrogated in part by Duryea v. Guarnieri, 131 S.Ct. 2488 (2011)). Conversely, an employee's speech addresses a matter of public concern when it can be "fairly considered as relating to any matter of political, social, or other concern to the

community." Connick, 461 U.S. at 147; see also Baldassare v. State of N.J., 250 F.3d 188, 195 (3d Cir. 2001) ("The content of the speech may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'") (citations omitted).  In addition, the Supreme Court has stated that speech addressing public concerns includes "subject[s] of legitimate news interest; that is, a subject of general interest and of value and concern to the public at the time of publication." City of San Diego v. Roe, 543 U.S. 77, 84 (2004); see also Connick, 461 U.S. at 146 ("[W]hether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."); Smith v. Central Dauphin School District, 419 F.Supp.2d 639, 647 (M.D.Pa.2005); Whitfield v. Chartiers Valley Sch. Dist., 707 F. Supp. 2d 561, 579-80 (W.D. Pa. 2010).

The Court finds that Dougherty's factual allegations establish a plausible claim that he was speaking as a citizen, and not pursuant to his official duties, when he made the reports in question.  The Defendants are essentially trying to argue that it was Dougherty's job to make reports of racial discrimination.  But, as Dougherty contends, the deficiency of this argument is that the Defendants have confused the question of where Dougherty learned this information (i.e., on the job) with the question of whether Dougherty was speaking pursuant to his official duties or as a citizen.  The mere fact that Dougherty learned about the alleged discriminatory conduct that gave rise to the reports while he was working as a school district employee does not automatically necessitate the conclusion that Dougherty was speaking pursuant to his official duties.  On the contrary, in the great majority of cases, it is likely that only an employee (that is, someone "on the inside") would be in a position to acquire information that is of public concern. See e.g. San Diego v. Roe, 543 U.S. 77, 80 (2004) ("The Court has recognized the right of

employees to speak on matters of public concern, typically matters concerning government policies that are of interest to the public at large, a subject on which public employees are uniquely qualified to comment.")  (citations omitted).  Moreover, the broad reading of Brown advocated by Defendants would effectively foreclose the ability of public employees to *ever* bring First Amendment claims against their employers, so long as *any* information they spoke on was acquired during the course of their employment.  While the Pickering line of cases was clearly intended to limit the ability of public employees to bring First Amendment claims against their employers, it was not intended to shutdown employee First Amendment claims altogether.

In addition, the Supreme Court in Garcetti reasoned that the official duties limitation did not unduly restrict employee speech, because the limitation simply reflects the exercise of employer control over what the employer itself has commissioned or created. 547 U.S. at 422.  Here, it cannot be said that the School District had either commissioned or created the type of report that Dougherty was making.  Furthermore, the Court finds unconvincing Defendants' argument that Dougherty had an "unquestionable duty to report job-related misconduct," created by the School District Code of Ethics.  The Supreme Court in Garcetti described the inquiry into whether an employee's speech is made pursuant to his or her official duties as not controlled by "formal job descriptions." Id. at 424.  Further, the listing of a task in a written job description is "neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." Id. at 425.  If general job descriptions or duties such as those described in the School District Code of Ethics were sufficient in establishing an employee's official duties, it would be all too easy for employers to evade First Amendment claims by simply creating excessively broad job descriptions.

Accordingly, the Court finds Defendants' citation to the general principles articulated in the Code of Ethics to be unhelpful in determining the content of Dougherty's official duties.

In their second argument, Defendants argue that Dougherty has not satisfied the public concern test because his reports "were not made out of any legitimate concern for the public." Rather, Defendants alternatively describe Dougherty as being on a "personal crusade" of "vilifying the School District in response to a perceived personal insult." The "personal insult" in question was Dougherty's statement, in an email he sent on November 13, 2010, claiming that Defendant Nunery had "insulted [his] professionalism."[2] Defendants, citing Slater v. Susquehanna County, 2012 U.S. App. LEXIS 406, No. 11-1726 (3d Cir. Pa. Jan. 9, 2012) (employee acted as an employee and not a citizen where his statement was intended to 'set the record straight' after being accused of wrongdoing) and Emigh v. Steffee, 442 Fed. Appx. 660, 665 (3d Cir. Pa. 2011) (employee's statements were not protected by the First Amendment where the employee's professional reputation was at stake and where there was no evidence he wanted the public to learn of the report), contend that this kind of "personally motivated speech" is not entitled to First Amendment protection.

According to the Complaint, Dougherty sent his first report of wrongdoing (to the FBI) on or about November 10, 2010, about the same time that Dougherty's email was sent on November 13, 2010. (Compl. ¶ 134.) All of Dougherty's other reports were made subsequent to November 10, 2010. (Id. ¶¶ 135-45.) Thus it is possible, as Defendants aver, that Dougherty was

---

[2] This email was uncovered during the investigation into alleged improprieties in the awarding of School District contracts. This email, along with others sent by Dougherty, was referred to in his termination letter. (Doc. 14, Ex. B.) The termination letter is expressly cited in Dougherty's Complaint (Compl. ¶ 184) and it speaks to the circumstances surrounding Dougherty's termination. The Court may therefore consider the termination letter, as it is integral to the present litigation, even though Dougherty did not include the letter in his pleadings. See DiFronzo v. Chiovero, 406 Fed. Appx. 605, 606 (3d Cir. 2011) ("a document integral to or explicitly relied upon in the complaint may be considered without converting the motion [to dismiss] into one for summary judgment") (citing In re Burlington Coat Factory Sec. Litig.,114 F.3d 1410, 1426 (3d Cir.1997)).

motivated, at least in part, by his own personal concerns. Nonetheless, the Court does not find that Dougherty's First Amendment claims fail the public concern test for this reason. Dougherty has alleged that there were two instances where IBS, a firm that was not a state-approved vendor and had never competitively bid for a School District contract, was nonetheless granted lucrative School District contracts because it was minority-owned and personally connected to Defendant Ackerman. The first contract IBS was awarded allegedly cost the School District $11,000 more than it would have otherwise cost if the School District had simply gone with the company it had already contracted with to do the work. These allegations of wrongdoing clearly implicate matters of public concern: the waste and inefficient use of taxpayer dollars in the Philadelphia School District based on racial discrimination. See e.g. Connick, 461 U.S. at 148 n. 8 (protests of racial discrimination are "matter[s] inherently of public concern"); Perry v. McGinnis, 209 F.3d 597, 608 (6th Cir. 2000) ("Thus, whether … [the] racial discrimination complaint was borne of civic-minded motives or of an individual employment concern is irrelevant. What is relevant is that the subject of … [the] … complaint was racial discrimination — a matter inherently of public concern."). The Court therefore finds that the public concerns apparent in the case at bar rise above the level of the job-related personal grievances at issue in Slater and Emigh.

**B. The Pennsylvania Political Subdivision Tort Claims Act Bars Dougherty's Whistleblower Claims against the School District and the School Reform Commission**

The Pennsylvania Political Subdivision Tort Claims Act ("PSTCA" or the "Act"), 42 Pa. Cons. Stat. § 8541 et seq, makes local agencies immune from state law tort claims, subject to certain exceptions. The Act provides that liability will be imposed only where: (1) the damages would be recoverable in the absence of the Act; (2) the injury was caused by a negligent act of the local agency or its employee; and (3) the injury was caused by an act specifically enumerated

11

in section (b). 42 Pa. Cons. Stat. § 8542(a). Section (b) enumerates only the following acts: (1) the operation of a motor vehicle in the possession or control of a local agency; (2) the care, custody or control of personal property in the possession or control of a local agency; (3) the care, custody or control of real property; (4) a dangerous condition created by trees, traffic controls, or street lights; (5) a dangerous condition of utility service facilities; (6) a dangerous condition of streets; (7) a dangerous condition of sidewalks; and (8) the care, custody or control of animals in possession or control of a local agency. 42 Pa. Cons. Stat. § 8542(b). The School District of Philadelphia and the School Reform Commission are local agencies under the Act. See e.g., White by Pearsall v. Sch. Dist. of Philadelphia, 553 Pa. 214, 217 (Pa. 1998).

Defendants argue that because Dougherty's claims under Pennsylvania's Whistleblower Law, 43 Pa. Cons. Stat. § 1421 et seq., do not fall within the enumerated exceptions to the PSTCA, Dougherty's claims against the School District and the School Reform Commission must be dismissed as a matter of law.  Dougherty, in his reply, argues that the PSTCA in § 8550 specifically exempts claims arising out of the "willful misconduct" of a defendant agency from protection of the statute.[3]  Dougherty claims that the School District and the School Reform Commission retaliated against him intentionally, and a violation of the Whistleblower Law

---

[3] Section 8550 provides:

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa. Cons. Stat. § 8550.

requires intent to retaliate.  Therefore, argues Dougherty, the PSTCA does not bar his Whistleblower Law claims.[4]

The Court agrees with the Defendants.  Section 8550 explicitly states that willful misconduct on the part of a local agency waives immunity under "sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages)." Section 8550 says nothing about waiving governmental immunity under § 8542.  Accordingly, Dougherty's argument based on § 8550 must fail.

Dougherty has offered no other reason or justification for why the PSTCA either does not apply or should be inferred to have been waived.  However, as Defendants argue, Pennsylvania's Constitution requires that the General Assembly's intent to retain immunity from suit be specifically waived.  1 Pa. Cons. Stat. § 2310.  Accordingly, exceptions to the PSTCA must be narrowly interpreted and strictly construed.  White, 553 Pa. at 217 (Pa. 1998).  The Court must therefore reject Dougherty's attempt to create a new exception to the PSTCA beyond those which have been specifically created by the General Assembly.  Accordingly, Dougherty's claims under the Pennsylvania Whistleblower Act against the School District and the SRC (Counts VII and XI) are dismissed.

---

[4] In his sur-reply, Dougherty appears to have abandoned the arguments he made in his response based on Rankin v. City of Philadelphia, 963 F. Supp. 463 (E.D. Pa. 1997) and Retenauer v. Flaherty, 164 Pa. Cmwlth. 182, 196, 642 A.2d 587 (1994).  Rightly so, as the Court agrees with Defendants that neither of these cases supports Dougherty's argument that the PSTCA does not extend to the Whistleblower Law.  Indeed, neither case addresses the question of whether the PSTCA can be used as a defense to the Whistleblower Law.

### C. The Pennsylvania Workers' Compensation Act Does Not Bar Dougherty's Whistleblower Claims against All Defendants

Defendants next argue that all of Dougherty's Whistleblower claims are barred by the Pennsylvania Workers' Compensation Act ("PWCA"), 77 Pa. Stat. Ann. § 411 et seq. The PWCA governs all injuries and/or personal injuries "arising in the course of [a worker's] employment and related thereto." 77 Pa. Stat. Ann. § 411. The PWCA further provides that "[t]he liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees…" 77 Pa. Stat. Ann. § 481. Defendants claim that because Dougherty's Whistleblower Law claims arise in the course of his employment with the School District and/or related thereto, these claims are pre-empted by the PWCA.[5]

The Court agrees with Dougherty that this argument is meritless. Defendants' broad reading of the PWCA would essentially allow the PWCA to swallow and render ineffective all statutory sources of employment rights, including the Whistleblower Law. Under Defendants' reading of the PWCA, it would make little sense for the Pennsylvania legislature to have enacted the Whistleblower Law in 1986 after having enacted the PWCA in 1915, if both statutes served the same purpose. However, the statutes do not serve the same purpose.[6] As Dougherty argues,

---

[5] Under § 411, the PWCA covers:

> injuries sustained while the employe[e] is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe[e], who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe[e]'s presence thereon being required by the nature of his employment.

77 Pa. Stat. Ann. § 411.

[6] The PWCA was enacted in 1915 as:

> An Act defining the liability of an employer to pay damages for injuries received by an employe[e] in the course of employment; establishing an elective schedule of compensation; providing procedure for the determination of liability and compensation thereunder; and prescribing penalties.

14

the PWCA is the exclusive remedy for employees who are the victims of most employer tort claims during the course of their employment. See e.g., Sedlacek v. A.O. Smith Corp., 2010 PA Super 25, 990 A.2d 801, 809 (Pa. Super. Ct. 2010) appeal denied, 607 Pa. 705, 4 A.3d 1054 (2010) and appeal denied, 607 Pa. 706, 4 A.3d 1055 (2010) ("There is no question that, as currently interpreted, the exclusivity clause, in most cases, effectively abolishes the *common law tort action* against one's employer for work-related injury.") (emphasis added). Defendants cite no case law suggesting that the PWCA was intended to provide the exclusive remedy for statutory causes of actions. As such, Defendants' argument fails.

### D. Dougherty's Complaint Does Not Sufficiently Plead Causes of Action Against the School Reform Commission and the SRC Commissioners

Finally, Defendants argue Dougherty's Complaint fails to identify any specific conduct on the part of the School Reform Commission or its past Commissioners sufficient to establish liability for either First Amendment retaliation or for violation of the Pennsylvania Whistleblower Act. Dougherty contends that he has alleged the following facts in support of his claims against the SRC and the Commissioners: (1) the SRC Defendants terminated him; and (2) the SRC knew of the Pepper Hamilton report's findings and recommendations, and the School District's recommendations. (Compl. ¶¶ 177-90.)

Dougherty's basic theory, as laid out in his Complaint, is that the School District Defendants recommended his termination to the SRC Defendants because he told the press and authorities about the IBS contract award. However, Dougherty provides no facts in support of

---

1915, June 2, P.L. 736, No. 338; 1937, June 4, P.L. 1552, § 1.

Conversely, the Whistleblower Law was enacted in 1986 as:

> An Act providing protection for employees who report a violation or suspected violation of State, local or Federal law; providing protection for employees who participate in hearings, investigations, legislative inquiries or court actions; and prescribing remedies and penalties.

1986, Dec. 12, P.L. 1559, No. 169.

this theory.  This theory is based on nothing more than the "information and belief" that "Defendants Ackerman and Nunery shared with Defendants Archie, Armbrister, Irizarry, and Dworetzky their rationale for wanting Mr. Dougherty terminated." (Compl. ¶ 185.)  This is mere speculation, and is therefore legally insufficient.  Dougherty does not point to any evidence in the pleadings or other integral documents, apart from this blanket assertion, that the SRC Defendants had knowledge of the allegedly improper reasons for his termination.  Dougherty essentially asks the Court to impute the allegedly improper motives of the School District Defendants to the SRC and the SRC Defendants.  However, Dougherty provides nothing that would justify the Court in making such an imaginative leap.  Indeed, the Court cannot help but note that in his entire 42-page, 234 paragraph Complaint, Dougherty can only point to thirteen paragraphs that allege any misconduct on the part of the SRC and the SRC Defendants.  Nothing in these thirteen paragraphs suggests that the SRC Defendants had any reason to believe Dougherty's termination was being recommended to them for any reasons other than the reasons stated in his termination letter.  Further, nothing in these thirteen paragraphs suggests that the SRC Defendants had any reasons to believe that the reasons stated in the termination letter were pretextual.

Because the Court finds that Dougherty has not pleaded sufficient facts indicating wrongdoing by the SRC or the SRC Defendants, Counts V, VI, and XII are dismissed.[7]

### IV.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss will be granted with respect to Counts V, VI, VII, XI, and XII.  However, the Motion to Dismiss will be denied with respect to Counts I, II, III, IV, VIII, IX, and X.  An appropriate order follows.

---

[7] Count XI, which also asserts a claim under the Whistleblower Law against the SRC, was previously dismissed in Section III.B.