IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCIS X. DOUGHERTY,                               :
                                                    :
                        Plaintiff,                  :
                                                    :
v.                                                  :        CIVIL ACTION NO.: 2:12-cv-01001
                                                    :
SCHOOL DISTRICT OF PHILADELPHIA, *et al.*,  :
                                                    :
                        Defendants.                 :

PLAINTIFF'S FINAL PRETRIAL MEMORANDUM

    1.    <u>Nature of the action and basis for Court's jurisdiction</u>

This case is about the Defendants' wrongful termination of Francis X. Dougherty, a

talented and dedicated public servant. Defendants fired Mr. Dougherty without justification

because he spoke out on issues of public concern and reported instances of wrongdoing and

waste.

The Court has jurisdiction pursuant to 28 U.S.C. Sections 1331 (federal question) and

1343(a)(1) and (3) (civil rights), over Mr. Dougherty's claims under 42 U.S.C. Section 1983 for

retaliation in violation of the First Amendment. Pursuant to 28 U.S.C. Section 1367, Mr.

Dougherty invokes the Court's supplemental jurisdiction over his claims under the Pennsylvania

Whistleblower Law, 43 PA. CONS. STAT. Sections 1421, *et seq*., which form part of the same case

or controversy.

    2.    <u>Plaintiff's brief statement of facts of the case</u>

Francis Dougherty was the Acting Chief of Operations for the School District of

Philadelphia. Part of his job was to oversee the District's capital improvements program,

including the award of capital contracts to qualified vendors. The School District had

established rules for determining a prospective vendor's qualifications, and for selecting a qualified vendor on any given project. Mr. Dougherty respected those rules, and he believed in his staff's ability to carry them out in the best interest of the District and the public.

Arlene Ackerman was the School District's Superintendent. She had full authority to carry out the administration and supervision of the School District under the policy direction of the SRC. When a $7.5M contract was to be awarded for the installation of security cameras in 19 persistently dangerous schools, Dr. Ackerman directed her staff to give the project to IBS, a small minority firm with which she had social ties, and which had never been pre-qualified by the School District. It marked the second time in less than one year that Dr. Ackerman ordered her staff to give a District contract to IBS. Dr. Ackerman's direction violated the School District's rules and procedures for the selection of contractors for capital projects. Dr. Ackerman substituted favoritism and racial preference for the District's system of access and fairness, and for the determination of contractors' qualifications in advance of awarding a contract. Even though the contract was within Mr. Dougherty's jurisdiction, Dr. Ackerman directed that John Byars, who was also not qualified for the task, to take leadership of the project.

Thereafter, under John Byars' leadership, School District staff encountered difficulty getting IBS' contract in place so that payments could issue and IBS could start work. IBS complained to Dr. Ackerman, who in turn told her Deputy Superintendent, Dr. Leroy Nunery (to whom Mr. Dougherty reported) to remedy the problem. Dr. Nunery held a meeting, from which he excluded Mr. Dougherty, to discuss the situation and expedite the contract. Mr. Dougherty heard of the meeting only after-the-fact. Mr. Dougherty heard from someone who was at the meeting that Dr. Nunery had said that he, Mr. Dougherty, was an obstacle to the project. In truth, however, Mr.Dougherty had been trying to help his staff work with IBS to get the cameras

installed. In essence, he had been silenced, and had been shut out of any chance to right the wrong through internal channels. He was "very very upset" at this insult to his professionalism, and he sent an email to Dr. Nunery saying so.

As a result of what he heard about the November 10 meeting, Mr. Dougherty felt that he had to blow the whistle on the award of the camera project, both to the press and to certain government authorities. He sent roughly 50 emails home to himself so that he had all the facts. He then contacted the FBI and the Philadelphia Inquirer. (Mr. Dougherty subsequently contacted other law enforcement and government officials.)

The *Inquirer* ran with the story, and, starting with a first article on November 28, 2010, and at least six more thereafter, repeatedly criticized Dr. Ackerman and her staff, both over the award of the contract and for changing their story about what happened. The FBI started an investigation. The Acting Secretary of Education demanded an explanation. Dr. Ackerman was upset. Everyone on her staff was furious. On December 13, Dr. Ackerman held a meeting with her cabinet at which she said that she was determined to find the leak. That afternoon, the District suspended with pay six employees who the cabinet suspected of being the leak, including Mr. Dougherty, pending an investigation. When Ms. Matthews gave Mr. Dougherty his suspension letter, she said that they were trying to find out who was leaking information to the press and that they had to suspend people. Mr. Dougherty told Ms. Matthews that he had contacted law enforcement about the IBS situation.

Within days of the first press report, the District's General Counsel, Michael Davis, interviewed employees who had been involved in the camera project, including Mr. Dougherty. Mr. Dougherty cooperated fully and told Mr. Davis the entire story about how the contract came to be awarded to IBS.

3

Mr. Davis decided that the investigation was too broad to handle internally, so the School District engaged Pepper Hamilton to do a compete investigation. Mr. Davis tasked Pepper's lead investigator, Michael Schwartz, to determine the facts, to propose reforms in the contracting processes, to find the leak, and to make additional recommendations about what to do with the leak suspects who remained on suspension. When the Pepper investigators asked Mr. Dougherty to come in for an interview, he declined to do so, through his attorney, on the ground that he was dealing with law enforcement as a whistleblower.

As part of its investigation, Pepper Hamilton looked at the electronic work records of certain District employees. The investigators found Mr. Dougherty's November 10 emails to his home accounts, as well as a pre-September 23rd email to citythoroughbred@yahoo.com (a name they did not recognize, but one of Mr. Dougherty's private email addresses), to which he had attached a copy of a completely unremarkable, one-page preliminary plan for the camera project. The Pepper investigators noted these findings in their investigative report, which they presented to the School Reform Commission on February 16, 2011. The Pepper report concluded that Mr. Dougherty's email to citythoroughbred@yahoo.com, and the fifty emails about the camera project to his home email account, constituted a violation of the Confidentiality provision of the School District's Code of Ethics, even though the Code of Ethics does *not* prohibit sending work home. And even though the Confidentiality provision expressly excepted the "practice of whistleblowing" from enforcement. With these glaring omissions, Pepper Hamilton recommended that the School District discipline Mr. Dougherty.

Pepper's findings supporting the recommendation to discipline Mr. Dougherty were a pretext for the true reason, i.e., that Mr. Dougherty was the leak.

On February 22, 2011, Ms. Matthews scheduled a meeting with Mr. Dougherty to discuss his performance. Again, through his counsel, Mr. Dougherty declined to attend, because he was dealing with law enforcement as a whistleblower. And, Mr. Dougherty had nothing more to add to what he had already told to Mr. Davis during his investigation nearly three months prior to the request.

On March 23, 2011, Dr. Ackerman met with Dr. Nunery, Ms. Matthews, and Michael Davis, where they discussed the options for dealing with Mr. Dougherty. Ms. Matthews recommended termination. Dr. Ackerman decided to terminate Mr. Dougherty. Dr. Nunery and Ms. Matthews concurred.

On March 30, 2011, Ms. Matthews informed Mr. Dougherty that the School District was going to recommend to the SRC that it terminate Mr. Dougherty's employment. Like the Pepper Report and recommendations, the reasons offered in the letter to justify the termination were a pretext for the true reason, i.e., that Mr. Dougherty was the leak.

Mr. Dougherty did not do anything wrong. Mr. Dougherty's actions did not in fact violate the School District's Code of Ethics. There is no rule against sending District documents to one's private email address at home. Further, the Confidentiality provision of the Code of Ethics states: "Nothing in this provision shall be interpreted as prohibiting the practice of "whistle-blowing."

Mr. Dougherty did not appeal the decision to the SRC. His termination became effective on March 30, 2011.

5

3.    <u>Monetary damages claimed</u>

(a)    Economic losses:  See expert report of Andrew Verzilli, attached to this memorandum as Exhibit A.

(b)    Pain and suffering in an amount to be determined by the jury.

4.    <u>Plaintiff's list of witnesses he intends to call at trial during his case in chief</u>

See Plaintiff's List of Witnesses for Trial, attached to this memorandum as Exhibit B.

5.    <u>Plaintiff's schedule of exhibits to be offered at trial</u>

See Plaintiff's Schedule of Exhibits for Trial, attached hereto as Exhibit C.

6.    <u>Plaintiff's estimate of number of days for trial:</u>

Plaintiff estimates that the trial will take three or four days.

7.    <u>Special comments</u>

Plaintiff anticipates that the following legal issues will arise before or during the trial.

1.    <u>Mr. Dougherty's speech was First Amendment protected because he spoke as a citizen on an issue of public concern (an issue for the court to determine).</u>

(a) <u>Mr. Dougherty acted as a citizen, and not as part of his official duties</u>

As to whether Mr. Dougherty acted as a citizen or as part of his official duties, the question here is *not* whether Mr. Dougherty learned about the contract award on his job (as Defendant argues), but whether it was his job – i.e., whether the School District had hired him – to report wrongdoing to the press. *San Diego v. Roe,* 543 U.S. 77, 80 (2004); *Garcetti v.*

*Ceballos*, 547 U.S. 410, 424-25 (2006).  It was certainly not Mr. Dougherty's job to report wrongdoing to the press or authorities.  As Judge Tucker found, Mr. Dougherty therefore acted as a citizen, (December 14, 2012 Memorandum Opinion of Hon. Petrese Tucker, Document No. 26 at pp. 7-10), and lost his job in so doing.

> b)  Mr. Dougherty  spoke out on an issue of public concern

Mr. Dougherty told both the *Inquirer* and the appropriate authorities how the Defendants preferentially handed a $7.5M contract to a minority firm with which Dr. Ackerman was socially friendly and which had not been pre-qualified.  These actions constituted a breach of public trust that was inherently a matter of public concern, as the newspaper stories demonstrated.  *City of San Diego, Cal. v. Roe, supra,* 543 U.S. at 83-84 (legitimate news interest implies a matter of public concern.)

> 2.  The First Amendment protects Mr. Dougherty's speech even if, at the time he engaged in protected activity,  he was upset with his superiors.

As the Third Circuit has stated: "It is not the grinding of the proverbial axe that removes the protection of the First Amendment, it is the private nature of the employee's speech." *Miller v. Clinton County*, 544 F.3d 542, 551, n. 6 (3d Cir. 2008); *see also*, December 14, 2012 Memorandum Opinion of Hon. Petrese Tucker, Document 26, at pp. 10-11.

> 3.  Vicarious liability: The School District is vicariously liable for Dr. Ackerman's actions

> a)  Vicarious liability when actor is a policymaker.

A municipal defendant can be held vicariously liable for an adverse action that is directed or acquiesced in by one who is authorized to make municipal policy. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-81 (1986); *cf. Marra v. Philadelphia Housing Authority*, 497 F.3d 286, 311 (3d Cir. 2007) (plaintiff could prevail on Section 1983 claim against the PHA if the jury found that Executive Director Carl Greene personally ordered or acquiesced in the retaliation).

7

A 'single instance' of misconduct by a policymaking city official may provide the basis for an inference that an official policy existed. *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-481 (1986); *Bartholomew v. Fischl,* 782 F.2d 1148, 1154 (3d Cir.1986); *Keenan v. City of Philadelphia,* 983 F.2d 459, 468 (3d Cir. 1992)

> b) Dr. Ackerman was a policymaker.[1]

Dr. Ackerman was a policymaker because she had full authority, both by contract and by statute, to operate the School District, subject to the policies of the SRC; and she retained full authority to measure the conduct and decisions of her subordinates. *Keenan v. City of Philadelphia,* 983 F.2d 459, 468 (3d Cir. 1992).[2] She was a high ranking, albeit non-voting, officer of the SRC (Secretary-Treasurer). Moreover, she had final decision-making authority to recommend to the SRC that the District terminate an employee, and her decision would become final absent a successful appeal by the affected employee. (Mr. Dougherty did not appeal to the SRC, nor did he have an obligation to do so before bringing this lawsuit.)[3]

Further, the School District and the SRC announced an official policy to all central office employees when it reminded them, at the outset of the Pepper investigation, that a School District employee "shall not disclose confidential information concerning ... affairs of the

---

[1]  The identification of those officials whose decisions represent official policy for the decision at issue is a legal question to be resolved by the trial judge before the case is submitted to the jury. It is then for the jury to determine whether those officials' decisions caused the deprivation of protected rights. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 737 (1989).

[2]  "In this case, the district court correctly determined that Police Commissioner Tucker was an official policymaker. In a previous case involving different facts, we also found that this same Philadelphia Police Commissioner was an official policymaker. See *Andrews,* 895 F.2d at 1481. As in *Andrews,* Tucker here "retained the authority to measure" the conduct and decisions of his subordinates, Grasso, Stoner, and Gallagher." *Keenan v. City of Philadelphia*, 983 F.2d 459, 468 (3d Cir. 1992) (emphasis supplied).

[3]  An employee suing under Section 1983 has no duty to exhaust administrative remedies. *Patsy v. Board of Regents*, 457 U.S. 496, 516 (1982).

8

School District." In this description of the Code of Ethics, the announcement stated that a

violation of the Code of Ethics "may result in administrative or disciplinary actions including

suspension **or dismissal**" (emphasis supplied). However, the description omitted the provision

that excepts the "practice of whistle-blowing," and it failed to note that employees may send

confidential information home without violating the Code.

    4.    <u>The Pickering balancing test does not apply when the Defendant denies that it took the adverse action because of the plaintiff's protected speech.</u>

Assuming that the Plaintiff has proven that he spoke out as a citizen on an issue of public

concern, and that the defendants were motivated by retaliation, the employer may avoid liability

either with the same-decision defense, or by offering a "Pickering balancing test" defense.

Under the Pickering balancing test, the employer seeks to prove that the potential disruption the

speech might cause was likely to outweigh the First Amendment value of the speech.

However, the Pickering balancing test defense is not available to an employer who denies

any retaliatory motive at all. Such balancing should occur only if the employer concedes that the

speech played a factor in the dismissal:

> "[A] public employer may dismiss an employee for speech addressing a
> matter of public concern if the state's interest, as an employer, in
> promoting the efficiency of its operations outweighs the employee's
> interest, as a citizen, in commenting upon matters of public concern. This
> balancing test comes into play only if the public employer concedes that it
> dismissed an employee because of the employee's protected speech but
> contends that it was justified in doing so. Rutgers denies that it dismissed
> San Filippo for his protected activities; accordingly, the balancing test has
> no application in the case at bar."

*San Filippo v. Bongiovanni*, 30 F.3d 424, 434 n.11 (3d Cir. 1994), *abrogated on other grounds
by Borough of Duryea v. Guarnieri*, 131 S. Ct. 2488 (2011).[4]

---

[4] However, in at least one subsequent case, the Third Circuit performed the balancing
analysis even though the defendant disputed whether the speech was a motivating factor. *See
Azzaro*, 110 F.3d at 980 (performing balancing analysis); *id.* at 981 (finding "a material dispute

The Pickering balancing test presents a question of law for the court to resolve.

     5.    <u>Plaintiff's right to a jury trial under the Whistleblower Law.</u>

     The Pennsylvania Whistleblower Law does not provide for the right to a jury trial.

However, a claim under the law is a claim, in part, for damages.[5]  The claimant should therefore

of fact as to whether [plaintiff's] reports were a motivating factor in the discharge decision").

     Nonetheless, even if the court does do a Pickering balance, and resolves it in the employer's favor, the employee may still demonstrate liability by proving that the employer disciplined the employee in retaliation for the speech, rather than out of fear of the disruption." *Lewis v. Cowen,* 165 F.3d 154, 163 (2d Cir. 1999); *Mandell v. County of Suffolk* 316 F.3d 368, 382 -383 (2d Cir. 2003)

[5] 43 PA. CONS. STAT.. § 1425

be entitled to a jury trial in federal court under the Seventh Amendment to the U.S. Constitution.[6]

By:  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
    ALICE W. BALLARD, ESQUIRE         LISA A. MATHEWSON, ESQUIRE
    Law Office of Alice W. Ballard, P.C.    Law Offices of Lisa A. Mathewson, LLC
    123 S. Broad Street, Suite 2135       123 South Broad Street, Suite 810
    Philadelphia, PA 19109             Philadelphia, PA 19109

Date:   August 26, 2013

---

[6] *See, Marra v. Philadelphia Housing Authority,* 497 F.3d 286, 314 (3d Cir. (Pa.) 2007):

> "Without expressing any comment about the propriety of these rulings, we note that scores of district courts in this Circuit have concluded that the Seventh Amendment confers a right to a jury trial on PHRA claims brought in federal court, at least where compensatory relief is sought. *See, e.g., Heater v. Kispeace,* No. Civ. A. 05–4545, 2005 WL 2456008, at *5 (E.D.Pa. Oct.5, 2005); *Grabosky v. Tammac Corp.,* 127 F.Supp.2d 610, 624 (M.D.Pa.2000); *Cortes v. R.I. Enterprises, Inc.,* 95 F.Supp.2d 255, 260–62 (M.D.Pa.2000); *Graham v. Toltzis Communications, Inc.,* No. Civ. A. 98–6269, 2000 WL 433978, at *1 (E.D.Pa. April 18, 2000); *Pellegrino v. McMillen Lumber Products Corp.,* 16 F.Supp.2d 574, 591 (W.D.Pa.1996); *Lubin v. Am. Packaging Corp.,* 760 F.Supp. 450, 453–55 (E.D.Pa.1991). "

*See also, Stoneback v. ArtsQuest,* 2012 WL 4963624, No. 12–3286, 9-10 (E.D.Pa. 2012):

> "As can be gleaned from the foregoing, the Court sees the latter, jury trial, path as correct. Even if the Court's inclination is wrong, the Court believes for the reasons stated below, that a jury should hear the Whistleblower Claim in an advisory capacity, allowing the Court to shelve, at least for now, a final determination of whether the Seventh Amendment guarantees Plaintiff a jury trial on that claim."

# EXHIBIT A

To Plaintiff's Final Pre-trial Memorandum

# Verzilli Consulting Group, Inc.
## Consulting Economists

Office Address:
411 North Broad Street
Lansdale, PA 19446

(215) 368-7797
Fax: (215) 368-9006

August 11, 2013

Alice W. Ballard, Esquire
Law Office of Alice Ballard, P.C.
123 South Broad Street
Suite 2135
Philadelphia, PA 19109

Re:   Francis Dougherty v. School District of Philadelphia

Dear Ms. Ballard:

The following is our analysis of the difference in back-pay and front-pay relative to Francis Dougherty. Mr. Dougherty's employment with the School District of the City of Philadelphia was terminated on April 27, 2011.

## Background

Francis Dougherty was born on December 6, 1966. He is presently 46.8 years of age, with an average statistical life expectancy of an additional 32 years (Life Tables, 2008).

At the time of the termination, Mr. Dougherty's position was Deputy Chief Business Officer for Operations (and Acting Chief of Operations) earning a base salary of $144,200. Mr. Dougherty's tenure with the School District of the City of Philadelphia began in October, 2008. As of the time of the termination, Mr. Dougherty's pension with the PSERS had not vested (vesting is 5 years of service).

Mr. Dougherty secured alternative employment with the City of Allentown as the Managing Director in February, 2012 with a base salary of $95,000 annually. Mr. Dougherty continues in this employment as of the present time.

## Methodology, Data & Assumptions

The following methodology, data and assumptions have been utilized to estimate differences in back-pay and front-pay relative to Francis Dougherty:

### Pre-Termination Earnings

Pre-termination earnings have been estimated based on Mr. Dougherty's salary with the School District of the City of Philadelphia, $144,200 annually. It is indicated that Mr. Dougherty was to receive a raise in his salary to $148,000. Accordingly, we have considered this base salary as of the time of the termination.

### Mitigation

As noted above, Mr. Dougherty secured alternative employment with the City of Allentown in February, 2012 earning $95,000 annually. Accordingly, we have utilized this level of earnings to estimate mitigation (post-termination earnings).

### Duration of Estimates

Back-pay has been estimated from April, 2011 through August, 2013. Front-pay has been estimated for periods of 3 years and 5 years from the present.

### Future Wage Growth

Based on data from both 1) the Congressional Budget Office, and 2) the Bureau of Labor Statistics (Employment Cost Index : State/Local Government), future wage growth has been estimated to be 2.0% annually.

### Employer-Provided Benefits

As noted above, Mr. Dougherty had not vested in the PSERS since his tenure at the time of the termination was under 5 years. However, had Mr. Dougherty remained employed with the School District of the City of Philadelphia through the present and the front-pay periods, his total service would have been in the range of 7.9 to 9.9 years.

**Francis Dougherty**
Page 3

We have estimated the loss in PSERS pension benefits based on the following defined benefit formula:

> 2.5% * Final Average Salary * Years

> Source : PSERS Pension Plan

This results in the following annual loss in PSERS pension benefits at age 62:

| | |
|---|---|
| 3 Years Front-Pay | $30,415 |
| 5 Years Front-Pay | $39,655 |

The present values of the loss in PSERS pension benefits have been estimated from age 62 through the life expectancy noted above. In addition, we did consider employee contributions of 7.5% in the analysis.

Mr. Dougherty, in his present employment, participates in the Pennsylvania Municipal Retirement System (PMRS). Based on information from the PMRS Annual Report, we have estimated the value of retirement benefits in mitigation to be 9.3% of earnings.

Discount Rate

The present values of future earnings and PSERS pension benefits have been estimated based on a discount rate of 4.0%. This discount rate is based on forecasted yields for short-term treasury securities prepared by the Congressional Budget Office, as well as average yields over the past 25 years (www.treas.gov). We would note that presently, yields on short-term treasury securities are under 0.2% (www.treas.gov).

**Francis Dougherty**
**Page 4**

## Summary of Opinions

Based on the information provided to date and the methodology discussed, we have estimated the difference in back-pay and front-pay relative to Francis Dougherty to be as follows:

|   |   |
|---|---|
| Back-Pay | $183,820 |
| Front-Pay | $260,123 to $382,620 |
| Overall Range of Back-Pay/Front-Pay | $443,943 to 566,440 |

The opinions are presented within a reasonable degree of economic certainty. We reserve the right to revise the estimates if additional information is reviewed that impacts on the data and assumptions utilized.

The following pages are detailed summary tables of the estimates. If you have any questions, please contact us.

Sincerely,

Andrew C. Verzilli, M.B.A.

Francis Dougherty

Table 1 : Back-Pay : April, 2011 through August, 2013

| Year | Pre-Termination Earnings | | Less Mitigation | | Loss in Back-Pay | |
|------|---|---|---|---|---|---|
| 2011 | $ | 87,570 | $ | - | $ | 87,570 |
| 2012 | $ | 148,000 | $ | (87,083) | $ | 60,917 |
| 2013 | $ | 98,667 | $ | (63,333) | $ | 35,333 |
| Total Earnings | $ | 334,237 | $ | (150,417) | $ | 183,820 |

[1] 2011 Pre-Termination : Less Actual Received (Pay Statement 5/13/11)
[2] Mitigation Considers Employment with City of Allentown : February, 2012

**Francis Dougherty**

**Table 2 : Front-Pay : 3 to 5 Years**

|  | | 3 Years | | 5 Years | |
|---|---|---|---|---|---|
| PV : Pre-Termination | $ | 427,141 | $ | 698,387 | $148,000 Annually |
| PV : PSERS Pension | $ | 146,647 | $ | 188,202 | Age 62 to SLE |
| Less Mitigation | $ | (274,178) | $ | (448,289) | $95,000 Annually |
| Less Mitigation Retirement | $ | (39,487) | $ | (55,680) | 9.3% (Including Back-Pay) |
| **Loss in Front-Pay** | **$** | **260,123** | **$** | **382,620** | |

[1] Discount Rate is 4.0%

## **Documents Reviewed**

- Complaint

- Portions of Deposition of Francis Dougherty

- Plaintiff's Self Executed Disclosures

- Employee Benefit Information (P00167, 00169-00178)

- Pay Statements (P00801 & P00801)

- Termination Pay Statement

- Employment Verification Inquiry Printouts (Dougherty 00076-00085)

- Various Publications and Source Documents (as cited)

# EXHIBIT B

To Plaintiff's Final Pre-trial Memorandum

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCIS X. DOUGHERTY                        :
                                            :
              Plaintiff,                    :
                                            :
v.                                          :        CIVIL ACTION NO.:  12-1001
                                            :
SCHOOL DISTRICT OF PHILADELPHIA, *et al,*   :
                                            :
              Defendants.                   :

## PLAINTIFF'S LIST OF WITNESSES FOR TRIAL

| A. | **Liability Witnesses** |
|----|----|
| 1. | Estate of Arlene C. Ackerman<br>   c/o Personal Representative<br>Anthony Antognoli<br>217 Dartmouth Dr. NE<br>Albuquerque, NM 87106-2113 |
| 2. | Yusef Ali<br>c/o IBS Communications, Inc.<br>1408 E. Mermaid Lane<br>Philadelphia, PA 19038 |
| 3. | Darryl Boozer<br>c/o IBS Communications, Inc.<br>1408 E. Mermaid Lane<br>Philadelphia, PA 19038 |
| 4. | John L. Byars<br>6100 City Avenue<br>Philadelphia, PA 19131 |
| 5. | Jeffrey D. Cardwell,<br>Senior Vice President, Facilities and Operations<br>c/o School District of Philadelphia<br>440 North Broad Street<br>Philadelphia, PA |

1

| 6. | Custodian of Records<br>School District of Philadelphia<br>440 North Broad Street<br>Philadelphia, PA |
|---|---|
| 7. | Michael A. Davis, Esq.<br>General Counsel, Office of General Counsel<br>c/o School District of Philadelphia<br>440 North Broad Street<br>Philadelphia, PA |
| 8. | Francis X. Dougherty<br>1349 Glen Echo Drive<br>Huntingdon Valley, PA 19006 |
| 9. | Melanie Harris<br>Chief Information Officer<br>c/o School District of Philadelphia<br>440 North Broad Street<br>Philadelphia, PA |
| 10. | Patrick Henwood<br>Former Senior Vice President, Office of<br>Capital Programs<br>School District of Philadelphia<br>52 Knightswood Dr., Marlton, NJ<br>08053-2547 |
| 11. | Estelle G. Matthews<br>Former Chief Office of Talent and<br>Development<br>School District of Philadelphia<br>530 Leon Circle<br>Feasterville-Trevose, PA 19053 |
| 12. | Amy McCole<br>Former Senior Information Technology<br>Project Manager<br>School District of Philadelphia<br>1230 Reed Street<br>Philadelphia, PA 19147-4912 |
| 13. | Leroy D. Nunery, II<br>Former Deputy Superintendent, Office of the<br>Chief Executive<br>School District of Philadelphia<br>511 Cresheim Valley Road<br>Wyndmoor, PA 19038 |

| 14. | Whitney Redding<br>c/o Pepper Hamilton LLP<br>3000 Two Logan Square<br>Eighteenth and Arch Streets<br>Philadelphia, PA 19103-2799 |
|---|---|
| 15. | Sara Richman<br>c/o Pepper Hamilton LLP<br>3000 Two Logan Square<br>Eighteenth and Arch Streets<br>Philadelphia, PA 19103-2799 |
| 16. | Michael A. Schwartz, Esq.<br>c/o Pepper Hamilton LLP<br>3000 Two Logan Square<br>Eighteenth and Arch Streets<br>Philadelphia, PA 19103-2799 |
| 17. | Miles H. Shore, Esq.<br>Deputy General Counsel, Office of General<br>Counsel<br>c/o School District of Philadelphia<br>440 North Broad Street<br>Philadelphia, PA |
| 18. | Robert Westall<br>Deputy Chief Information Officer<br>c/o School District of Philadelphia<br>440 North Broad Street<br>Philadelphia, PA |
| 19. | TBA - individuals on Defendants' list of witnesses for trial |
| 20. | TBA - individuals identified through any supplemental discovery |
| **B.** | **Damages Witnesses** |
| 21. | Francis X. Dougherty<br>1349 Glen Echo Drive<br>Huntingdon Valley, PA 19006 |
| 22. | Andrew Verzilli<br>Verzilli Consulting Group, Inc.<br>411 N. Broad Street<br>Lansdale, PA 19446 |
| 23. | TBA - individuals on Defendants' list of witnesses for trial |

| 24. | TBA - individuals identified through any supplemental discovery |
|---|---|

By: _____
ALICE W. BALLARD, ESQUIRE
Law Office of Alice W. Ballard, P.C.
123 South Broad Street, Suite 2135
Philadelphia, PA 19109
(215) 893-9990


_____
LISA A. MATHEWSON, ESQUIRE
Law Offices of Lisa A. Mathewson, LLC
123 South Broad Street, Suite 810
Philadelphia, PA 19109
(215) 399-9592

Attorneys for Francis X. Dougherty

Date:   August 26, 2013

# EXHIBIT C

To Plaintiff's Final Pre-trial Memorandum

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCIS X. DOUGHERTY,                          :

               Plaintiff,               :
                           :
    v.                                       :      CIVIL ACTION NO.: 2:12-01001-JS
                           :
SCHOOL DISTRICT OF PHILADELPHIA, *et al.*, :
                           :
            Defendants.               :

## PLAINTIFF'S SCHEDULE OF EXHIBITS FOR TRIAL

| **Exhibit No.** | **Doc Id.** | **Description** |
|---|---|---|
| Exhibit 1 | P461 | November 10, 2010 email from Dougherty to Nunery |
| Exhibit 2 | P537-540 | November 28, 2010 *Inquirer* article: "Ackerman Steered Work, Sources Say" |
| Exhibit 3 | P594 | December 13, 2010 letter from Matthews to Dougherty – Davis Dep. Ex. 10 |
| Exhibit 4 | D1957-1965 | Michael Schwartz' handwritten notes of December 17 meeting with Michael Davis – Schwartz Dep. Ex. 12 |
| Exhibit 5 | Davis Dep. Ex. 11 | January 6, 2011 memo from Michael Davis to Central Office employees – Davis Dep. Ex. 11 |
| Exhibit 6 | D590-592 | Pepper Investigators' typed memorandum of interview with John Venti |
| Exhibit 7 | D593-595 | Pepper Investigators' typed memorandum of interview with Wayne Grasela |
| Exhibit 8 | D600-602 | Pepper Investigators' typed memorandum of interview with Stu Perrone |
| Exhibit 9 | D603-605 | Pepper Investigators' typed memorandum of interview with John Lombardi |

| Exhibit 10 | D606-615 | Pepper Investigators' typed memorandum of interview with Jeff Cardwell – Schwartz Dep. Ex. 23 |
| Exhibit 11 | D620-622 | Pepper Investigators' typed memorandum of interview with Carol Leaks |
| Exhibit 12 | D623-638 | Pepper Investigators' typed memorandum of interview with Robert Westall |
| Exhibit 13 | D645-653 | Pepper Investigators' typed memorandum of interview with Melanie Harris |
| Exhibit 14 | D654-659 | Pepper Investigators' typed memorandum of interview with Augustine Pescatore |
| Exhibit 15 | D670-681 | Pepper Investigators' typed memorandum of interview with John Byars |
| Exhibit 16 | D682-688 | Pepper Investigators' typed memorandum of interview with Dr. Ackerman |
| Exhibit 17 | D706-710 | Pepper Investigators' typed memorandum of interview with Matt Lehmann |
| Exhibit 18 | D716-719 | Pepper Investigators' typed memorandum of interview with Jim Doosey |
| Exhibit 19 | D723-727 | Pepper Investigators' typed memorandum of interview with Joe Antonio |
| Exhibit 20 | D742-745 | Pepper Investigators' typed memorandum of interview with Tomas Hanna |
| Exhibit 21 | D746-749 | Pepper Investigators' typed memorandum of interview with Brendan Lee |
| Exhibit 22 | D682-688 | Pepper Investigators' typed memorandum of interview with Arlene Ackerman |
| Exhibit 23 | D689-694 | Pepper Investigators' typed memorandum of interview with Leroy Nunery – Nunery Dep. Ex. 1 |
| Exhibit 24 | D728-733 | Pepper Investigators' typed memorandum of interview with Estelle Matthews |
| Exhibit 25 | D645-653 | Pepper Investigators' typed memorandum of interview with Melanie Harris |

| Exhibit 26 | D759-766 | Pepper Investigators' typed memorandum of interview with IBS |
| Exhibit 27 | D660-669 | Pepper Investigators' typed memorandum of interview with Patrick Henwood – Schwartz Dep. Ex. 25 |
| Exhibit 28 | D1-12 | February 16, 2011 Report and Recommendations from Pepper investigation |
| Exhibit 29 | P-665 | February 17, 2011 letter from Matthews to Dougherty scheduling a conference |
| Exhibit 30 | P785-786 | District Press Release by Davis "Statement ... Third-Party Investigator's Findings" – Davis Dep. Ex. 14 |
| Exhibit 31 | P791-794 | March 30, 2011 letter from Matthews to Dougherty/termination notice – Davis Dep. Ex. 15 |
| Exhibit 32 | P37-46 | School District of Philadelphia Employee Code of Ethics |
| Exhibit 33 | D1765-770 and 1774-779 | citythoroughbred@yahoo.com email attaching formatted and reformatted personal bios |
| Exhibit 34 | P453, 491-493 | Emails from Dougherty regarding camera project program status |
| Exhibit 35 | P1082-1154 | Byars' SRC dismissal appeal hearing - Byars testimony and related exhibits |
| Exhibit 36 | P949-1058 | Byars' SRC dismissal appeal hearing - Nunery testimony and related exhibits |
| Exhibit 37 | P823-893 | Matthews UC hearing testimony and related exhibits – Matthews Dep. Ex. 8, Dougherty III Dep. Ex. 20 (P941-943) |
| Exhibit 38 | P203-218 | 3/10/10 District "Minority/Women Business Enterprise (MWBE) Participation FY 2010 First Half Report" – Nunery Dep. Ex. 12 |
| Exhibit 39 | P1-29 P1504, 1533-1535 | Office of Capital Programs materials; 9/22/10 SRC Proposed Resolutions -- Schwartz Dep. Exhibit 21 |
| Exhibit 40 | P195-198 | 12/11/09 Memo from Dougherty to Hanna, Subject: South Philadelphia High School |
| Exhibit 41 | P272-75 | 9/13/10 District draft letter to Gluck from SDP |

| Exhibit 42 | P257, 258-59, 265-65, 266-67, 268-71, 281-84, 292-93 | Camera Surveillance Project staff emails |
|---|---|---|
| Exhibit 43 | P294-98 | 9/17/10 Memo to Nunery from Dougherty "Surveillance Cameras Implementation Plan |
| Exhibit 44 | P299-314, 316, 351-364 | Camera Project staff emails |
| Exhibit 45 | P318-20 | 10/12/10 Letter from IBS to District/John Byars |
| Exhibit 46 | P392 | 10/20/10 SRC Resolution "A-14 (Exhibit A-Materials)" |
| Exhibit 47 | P463-465 | Dougherty FBI website complaint snapshot – Dougherty Dep. Ex. 3 |
| Exhibit 48 | P506-532 | 11/17/10 Agreement for Services Project: Surveillance Systems at Persistently Dangerous Schools" effective 9/22/10 |
| Exhibit 49 | P567-568 | 12/7/10 "Letter to the Editor: Ackerman welcomes contract investigation," *The Philadelphia Tribune,* Arlene Ackerman |
| Exhibit 50 | P616-621 | 12/17/10 Letter to Gluck from Michael A. Davis cc Ackerman, Nunery, Shopp.  Re: Complaint Regarding School District Contracting – Davis Dep. Ex. 6 |
| Exhibit 51 | P627 | 12/21/10 email from Dougherty to Dept of Ed OIG hotline |
| Exhibit 52 | P804 | 4/27/11 SRC Resolution – Dougherty terminated |
| Exhibit 53 | D572-573 | 9/9/10 email from SDP Dougherty to citythoroughbred@yahoo.com – UC Appeal Hearing Ex. E6 |
| Exhibit 54 | | Press Reports regarding District Camera Surveillance Project – 11/30/10 (P545-546), 11/30/10 (P549-550), 12/2/10 (P551-553), 12/2/10 (P554-555), 12/3/10 (P556-57), 12/3/10 (P558-559), 12/3/10 (562-563), 12/7/10 (P567-568), 12/12/10 (P590-593), 12/14/10 (P596-597), 12/14/10 (P598-599), 12/15/10 (P600-601), 12/16/10 (P610-611), 12/16/10 (P614-615), 12/21/10 (P622-623), 12/22/10 (P636-637), 12/23/10 (P638-640), 12/23/10 (P641-643), 1/10/11 (P647-649), 1/10/11 (P650), 1/10/11 (P650), 1/13/11 (P651-652), 1/16/11 (P653), 1/18/11 (P654-655), 1/24/11 (P657), 1/25/11 (P658-659), 2/21/11 (P668-669), 2/23/11 (P670-671), 2/24/11 (P672) |

| Exhibit 55 | D1055-1057 | 11/28/10 email from Ackerman to SRC Commissioners, Girard-diCarlo, Nunery, Fraser, Davis, Phillips. Subject: Today's Article – Davis Dep. Ex. 9 |
| Exhibit 56 | D543-544 | 11/29/10 District response to 11/28/10 *Inquirer* story – Davis Dep. Ex. 16, Nunery Dep. Ex. 11 |
| Exhibit 57 | P589 | 12/10/10 "Statement by the School District of Philadelphia" re "Majority Owned Vendors and Intent to Use Minority Firms" |
| Exhibit 58 | P595 | 12/13/10 email from Kemp to "undisclosed-recipients," 6:31 PM. Subject: SDP Statement: Expert to Investigate Business and Facilities Operations |
| Exhibit 59 | P634-635, P1272 | Email exchanges between Dougherty and FBI |
| Exhibit 60 | D1966-1967 | Pepper investigator notes – Schwartz Dep. Ex. 11 |
| Exhibit 61 | D1974-1984 | Pepper investigator notes – Schwartz Dep. Ex. 13 |
| Exhibit 62 | D1987-2006 | Pepper investigator notes – Schwartz Dep. Ex. 14 |
| Exhibit 63 | P914-924 | Ackerman Employment Agreement - Schwartz Dep. Ex. 17 |
| Exhibit 64 | P1499-1501 | *PW* article "City's cameras Not a Pretty Picture" – Schwartz Dep. Ex. 22 |
| Exhibit 65 | D1180-1198 | Pepper Investigator's notes of Cardwell interview – Schwartz Dep. Ex. 24 |
| Exhibit 66 | P365-431 | SRC "Public Meeting Proposed Resolutions October 20, 2010" |
| Exhibit 67 | Davis Dep. Ex. 2 | 10/23/10 "Standard Amendment Agreement" between Unisys and City of Philadelphia |
| Exhibit 68 | Davis Dep. Ex. 13 | 2/17/11 letter to Miller/DOE from Davis |
| Exhibit 69 | P269-271 | Email from Dougherty to Nunery, Hanna, Tomas; Nixon, Penny; Patterson, Myron; cc Henwood; Harris; Brendan Lee; Cardwell Jeffrey; Hunter, Robert; Caroselli, Tito, 12:02 PM. Subject: Surveillance Camera upgrade plan. Attachments: SECURITY PLAN.doc – Cardwell Dep. Ex. 1 |

5

| Exhibit 70 | P281-284 | 9/14/10 email from Dougherty to staff re PDS security project – Cardwell Dep. Ex. 2 |
| --- | --- | --- |
| Exhibit 71 | P293-298 | 9/17/10 email from Dougherty to staff re walk-on request for cameras – Cardwell Dep. Ex. 3, Nunery Dep. Ex. 5 |
| Exhibit 72 | P317 | 9/24/10 email from Lee to Cammisa re camera job – Cardwell Dep. Ex. 4 |
| Exhibit 73 | P500 | 11/17/10 email from Cardwell to Nunery re meeting request – Cardwell Dep. Ex. 5 |
| Exhibit 74 | P541 | 11/29/10 letter from Dougherty to Nunery, cc Ackerman re 11/29/10 meeting – Cardwell Dep. Ex. 6 |
| Exhibit 75 | . | 7/12/13 Cardwell Dep. Errata Sheet |
| Exhibit 76 | Matthews Dep. Ex. 1 | 12/10/11 *philly.com* article "Schools' human resources official was 'allowed to resign,' Phila. district says" - |
| Exhibit 77 | P533-534 | 11/21/10 email from Nunery to staff re RFP Process Enhancements – Matthews Dep. Ex. 6 |
| Exhibit 78 | Gluck Subpoena | 2/10/11 letter from Miller/Pa Office of General Counsel to Davis |
| Exhibit 79 | P560-561 | 12/3/10 letter from Gluck to Ackerman |
| Exhibit 80 | Gluck Subpoena | 12/1/10 letter from McGeehan to Gluck |
| Exhibit 81 | P624-626 | 12/21/10 letter from Gluck to Mariano/Auditor General |
| Exhibit 82 | D22-24 | 9/10/10 email from Dougherty to Nunery and staff re Security Plan.doc – Nunery Dep. Ex. 3 |
| Exhibit 83 | P281-282 | 9/14/10 email from Dougherty to staff re PSD Security Project – Nunery Dep. Ex. 4 |
| Exhibit 84 | P299-300 | 9/18/10 email from Antonio to Nunery and staff re SRC walk on request for cameras.doc – Nunery Dep. Ex. 6 |
| Exhibit 85 | Dougherty III Dep. Ex. 18 | 11/10/10 email from Dougherty to fxddougherty@yahoo.com re forwarded documents |
| Exhibit 86 | Dougherty | 11/10/10 email from Dougherty to fxddougherty@yahoo.com |

|  | III Dep. Ex. 21 |  |
|---|---|---|
| Exhibit 87 | Dougherty III Dep. Ex. 22 | 11/10/10 email from Dougherty to fxddoughtery attaching document |
| Exhibit 88 | P1406 | 11/12/10 email from Woodall/Inquirer to Dougherty re thanks – Dougherty III Dep. Ex. 23 |
| Exhibit 89 | P1273 | 12/22/10 email from Dougherty to Clymer |
| Exhibit 90 | P1276-77 | 12/15/10 email exchange between Dougherty and McGeehan |
| Exhibit 91 | P48-70 | SDP "Anti-Discrimination Policy Procedures Manual Office of Procurement Services Small Business Development" |
| Exhibit 92 | P77-152 | SDP, OFFICE OF PROCUREMENT SERVICES, John L. Byars, Executive Director, Procurement Services "POLICIES & PROCEDURES MANUAL" |
| Exhibit 93 | P185-194 | SRC Ratification Process |
| Exhibit 94 |  | Philadelphia Home Rule Charter Chapter 12 |
| Exhibit 95 |  | Report of Andrew Verzilli; documents reviewed and relied on by Andrew Verzilli |
| Exhibit 96 |  | Declaration of Lisa A. Mathewson with Exhibits, including Schwartz Dep. Ex. 6, Davis Dep. Ex. 8 |
| Exhibit |  | TBD – documents identified in Defendants' schedule of exhibits for trial |
| Exhibit |  | TBD – documents produced in any supplemental discovery |

## CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2013 I caused a true and correct copy of the foregoing

Plaintiff's Final Pretrial Memorandum and all attachments upon Counsel for the Defendants

through the Court's electronic filing system –

> Joe H. Tucker, Esquire
> Corey M. Osborn, Esquire
> Bacardi L. Jackson, Esquire
> Tucker Law Group, LLC
> One Penn Center at Suburban Station
> 1617 JFK Boulevard, Suite 1700
> Philadelphia, PA 19103
>
> Christopher A. Lewis, Esquire
> Will J. Rosenzweig, Esquire
> Blank Rome LLP
> One Logan Square
> 130 N. 18th Street
> Philadelphia, PA 19103

                              /S/
                              Alice W. Ballard